CHANCERY. ***Stevenson and wife vs. Dunlap's and.***
***Blight's heirs.***

Case 24. Appeal from the Hardin Circuit; PAUL I. BOOKER, Judge.

*Evidence. Writings. Copies. Cross bills. Appeals. Conditions precedent. Specific performance. Parol contracts. Improvements and rents. Leases. Practice. Liens.*

April 25. Judge MILLS delivered the Opinion of the Court.

[Absent – Chief Justice BIBB.]

Case stated. THIS is a bill in chancery, brought first by Stevenson and wife, for the specific performance of a contract, in which, if granted, it will be necessary to divide and direct a conveyance of part of 131,000 acres of land.

Title to the land. These lands were entered, as alleged, 98,000 acres thereof, in the name of William M'Williams, in one entry, 28,000 acres in the name of John Hawkins, in another tract, and 5000 acres thereof, in the name of Paul Simon, in a third entry: the date of the entries does not appear from the record. The surveys were made in September, 1787, and the patents issued jointly to John Dunlap and Michael Hilligas, on the 4th of February, 1788. John Dunlap the patentee, died, and devised all his interest to his son, John Dunlap, jr. who sold and conveyed the same to Samuel Blight, his brother-in-law, who had also married a daughter of John Dunlap the elder. Michael Hilligas, the other patentee, died, having first devised his land to his children, who sold and conveyed all, except a small portion thereof to the said Samuel Blight, and although the heirs and devisees of the patentees, are made parties, and are proceeded against as non-residents, yet the style of the controversy, is between Stevenson and wife, and Blight who has appeared and answered.

Ground of Stevenson's claim. The extent claimed by Stevenson and wife, is two ninths of the whole, and their equity, as they allege, is based on an article of agreement, dated on the 8th of October, 1783, between the said John Dunlap, Michael Hilligas, the patentees, and James Dunlap, George Keightly and William Orr, in which it is stipulated, that the parties are interested in sundry

unlocated land warrants, the said John Dunlap, James Dunlap, George Keightly and William Orr, to the amount of two ninths each, and Hilligas to one ninth, all being then in Philadelphia, which warrants, the said James Dunlap, Keightly and Orr, were to bring to the western country, and have surveyed, and the plats and certificates returned, on certain conditions and stipulations hereafter more fully noticed, and then, each by allotment, was to draw and receive patents in their own names.

STFVENSON AND WIFE vs. DUNLAP's & BLIGHT's HEIRS.

James Dunlap, Keightly, and Orr, did come to Kentucky, in the fall 1783. Keightly was killed by the Indians in the spring, or beginning of the summer, 1784, leaving one infant daughter, who is now Mrs. Stevenson, the appellant, then in Ireland, where both she, and her father were born; he never having left that country till the summer 1783, and he died a subject of the king of Great Britain. James Dunlap lived many years afterwards, but at length died unmarried and childless, leaving no relations in America, save the aforesaid John Dunlap the elder, who was his brother. James having been a native of Ireland, was never in the United States till he came with Keightly, in the year 1783.

Orr, was also, an Irishman, who came to America with James Dunlap and Keightly, and returned to Ireland a few years afterwards, and staid sometime, and then returned to America in the year 1793, and he died in 1801, but not till after he had sold and conveyed his interest, which he claimed in these lands, to a Mr. Fulton, of Baltimore, who sold and conveyed it to John Alexander, whom Stevenson and wife make defendant to their bill, as now standing in the place of one of the original partners.

Alexander answered the bill, admitting the equity of Mrs. Stevenson, as heiress of Keightly, one of the partners, and alleging that he is entitled to the interest of Orr, and by a singular course of pleading, made his answer a bill also against Blight and the children of John Dunlap, and the children of Hilligas, and prays that *his* interest may be assigned and conveyed to him.

Alexander's answer.

STEVENSON
AND WI. E
VS.
DUNLAP'S
& BLIGHT'S
HEIRS.

Stevenson
and wife's
and Alexan-
der's bill dis-
missed; ap-
peal by Ste-
venson and
wife only

Blight had
notice of Ste-
venson's
claim.

Evidence in
proof the ori-
ginal agree-
ment be-
tween the
Dunlaps,
Keightly, Orr
and Hilligas
and the copy
produced.

Blight answered him, setting up the same defence, which he relies on against Stevenson and wife.

The court dismissed the bill of Stevenson and wife, as well as that of Alexander, and from that decree Stevenson and wife have appealed to this court.

The merits of the claim and defence will appear in the consideration of the case, and need not be recited, except so far as shall be necessary to understand the questions decided.

Blight, though a purchaser of these lands, cannot pretend to stand as an innocent purchaser, who has completed his title, and paid the consideration without notice of the claims set up thereto by the heiress of Keightly. For the proof is clear, that he heard of the claim long before he purchased, and in his answer, although he alleges himself to be a *bona fide* purchaser, yet he does not once deny notice of the claim. It is, therefore, evident, that he has gained no advantage in the controversy by his purchase, but must stand in the shoes of Hilligas and John Dunlap, and must resist the equity set up by the same defence that the patentees could have made against it. The share of the partners, John Dunlap and Hilligas, is secured, and more than secured by the legal title being vested in them by the patents. The share of James Dunlap, has passed by inheritance to John Dunlap, if it existed, and could pass, or descend in his situation as an alien. The parts, therefore, of Keightly and Orr, are alone left to be settled.

We have had some difficulty in admitting the article of agreement relied on in the bill. The complainants only present a writing, which purports to be a copy taken from the records of the county where the land lies, and where another copy was also illegally recorded. They declare their ignorance of where the original is, and charge some of the defendants with having it in their possession. Blight denies having the original, and also denies that the copy produced, is a true copy, and requires proof, and further denies knowledge of the contents.

of the original. The complainants, Stevenson and wife, do not prove that the original was ever executed, or produce the subscribing witnesses, or show what was become of them, or prove either their hand writing, or the hand writing of the parties. But Stevenson and wife have made proof by Alexander himself, that about the year 1793, at the request of Orr, he called upon John Dunlap, for the original instrument, and Dunlap informed him that it was in the custody of Hilligas, the other patentee, from whom he obtained an inspection of it, and that it was in the handwriting of the parties thereto, as to the signatures, and that the copy now produced is a true copy.

It has been held in some cases of trials at common law, that if a party, on notice given for that end, produces a writing *entre parties*, on the call of his adversary, the adversary need not prove its execution, because the law, in such case will presume it genuine, and that the party producing it, would not attempt to withhold it, and then produce it against himself, unless it was so.

This case is somewhat analogous, and although the cases are contradictory on this point, yet, when it is known, that this writing was executed in Philadelphia, if executed at all, forty years before this trial, where the witnesses must, in all probability, have resided, that it was directed to by one of the patentees, and produced by the other; that John Dunlap has in more instances than one, both by writing and in words, recognized the claims of Keightly, and in one or two receipts for taxes, given to Mrs. Stevenson's uncles, for taxes on the land advanced for her by them, expressed her interest, or claim to be two ninths, which corresponds with the copy produced, and both John Dunlap and Hilligas, in a letter to the mother of Mrs. Stevenson in Ireland, have both admitted, that the father, George Keightly, had some interest, we incline to the opinion, that the complainants, Stevenson and wife, may be allowed to resort to the inferior evidence of a copy, after proving that it corresponds with the original

*Margin notes:*

STEVENSON AND WIFE vs. DUNLAP'S & BLIGHT'S HEIRS.

When one party produces a deed *entre par ies* on the notice of the other party, its execution may be presumed it seems.

Circumstantial evidence in proof of writings.

STEVENSON
AND WIFE
vs.
DUNLAP'S
& BLIGHT'S
HEIRS.

produced, and shewn formerly by the patentees themselves.

As to Alexander, however, the case might be different. His deposition could not be used, and is not offered to be used in his own case. But we do not conceive that it is proper to decide whether he can or cannot use this copy, for a reason hereafter mentioned.

Substance of the original agreement between the Dunlaps, Keightly, Orr, &c.

The article recites, that the parties had purchased sundry Virginia land warrants, and recites the names to whom issued the numbers and quantities of each, and then contains the following precedent conditions and stipulations, to be performed on the part of Keightly, James Dunlap and Orr. The quantity was 135,000 acres in the whole, and they were to set off with convenient speed, from Philadelphia to Pittsburgh, thence down the Ohio, and to enter some of its waters in search of unlocated and unappropriated *good* land, if the same was not attainable on the banks of the Ohio, and when found, to cause the quantity of lands to be surveyed by the surveyor of the county, in one, or as many spots or places, as should be to the greatest advantage of the concern, to obtain drafts of the same, and returns of survey to the proper officers, from the said surveyors, to the end, that patents for the land might be obtained. The instrument then proceeded to state, that when the said James Dunlap, Orr and Keightly, should "so" have superintended the surveys of the aforementioned land, and have the drafts and returns thereof made out, then the parties should draw lots for the same, in small parcels, to render the whole more equal, and that patents might issue accordingly. Then John Dunlap and Hilligas were to pay the acting partners, James Dunlap, Keightly and Orr, their proportion of the expenses of the trip, according to the quality and quantity which they should obtain, and likewise, pay six dollars for each thousand acres of respective shares.

Allegations of the bill of

The bill of the complainants, Stevenson and wife, does not fully allege the performance of these precedent conditions, on the part of Keightly during his

life, or of his co-partners, James Dunlap and Orr, after his death, to the extent of their undertaking.

The amount of their allegations is this, that James Dunlap, Keightly and Orr, did proceed from Philadelphia to Kentucky, and caused the land warrants to be located and entered, or 131,900 acres thereof, leaving the remaining 4000 acres in the dark, as to what had become of them. They further allege, that George Keightly made ample provision and disbursements for the surveying of the lands before he was killed, and that John Dunlap and Hilligas had, in fraud of the rights of the heiress of Keightly, got the lands patented to themselves. They say nothing about what Orr and James Dunlap did after the death of Keightly, although they were first the joint, and then the surviving obligors of Keightly.

The bill of Alexander, and also his answer in this respect, is still more deficient. But we need not notice it, except so far as it might be brought in aid of Stevenson and wife. For, from a minute examination of the record, it will appear, that the case of Alexander is not before the court. The court below, as was very proper, dismissed his bill by a separate decree, and he prayed a separate appeal, yet he never entered into an appeal bond. He is, therefore, only before the court as a defendant to to the bill of Stevenson and wife, as far as it is necessary to do them justice. His own claims, set up by a bill attached to his answer, form a distinct suit, although he has been allowed to attach it to the suit of Stevenson and wife. It is not so intimately connected with the first suit that justice cannot be done without his claim. And although, it is a general rule, that when a complainant appeals, he brings with him all the parties to the bill and decree as they stood in the court below, yet it does not thence follow, if one of the defendants shall, by a bill attached to his answer, contrary to the usages of a court of equity, implead another defendant, or a stranger in a controversy, in which the original complainant had no concern, that this latter controversy is brought before this court on the appeal of

STEVENSON AND WIFE

vs.

DUNLAP'S & BLIGHT'S HEIRS.

Stevenson and wife, in relation to the surveying the lands and obtaining the patents.

When a defendant to the original bill files a cross bill, making his co-defendants and others defendants, and the original and his cross bill are each dismissed, he appeal of the original complainant does not bring the decree dismissing the cross bill before the court.

STEVENSON
AND WIFE
VS.
DUNLAP'S
& BLIGHT'S
HEIRS.
the original complainant. Alexander had a right,
or an election, to acquiesce in the decree against
him, or to appeal from it. He has chosen the form-
er course, by omitting to execute an appeal bond.
If, therefore, we should say, that Stevenson and
wife, by their appeal, have brought the controver-
sy between Alexander and the other defendants be-
fore the court, where it must be tried, it would be
allowing Stevenson and wife to compel Alexander
to try the cause in this court without *his* consent,
and of subjecting the defendant in his bill to an ad-
judication of this court, when neither the complain-
ants or defendants in his suit require it. Such a
consequence cannot be allowed. And although it
has been supposed in argument, that he is a party
complainant here, and he has been represented by
an argument made in his favor, yet it has arisen
from the inattention of counsel, in not attending to
the true state of the record in this respect.

Blight's an-
swer, resisting
the claim of
Stevenson
and wife un-
der Keightly.
In answer to the bill of Stevenson and wife,
Blight insists, that the locators, if they located at
all, not only did not get good land, as they were
bound to do, when they might have done so by lo-
cating in smaller tracts, as their undertaking contem-
plated, but that they located on bad lands in large
bodies, and on lands before appropriated, and that
they never accounted for 4000 acres of the war-
rants, but appropriated them to their own use. But
he denies that they ever located the warrants at all,
or paid one article of expense attending the same;
that they did not pay their respective portions in the
purchase of the warrants at first, that they did not
pay a cent for either locating, surveying or return-
ing the plats and certificates to the register's office,
or pay any expenses incident thereto, or the taxes
thereon due to the government since

Evidence of
the non-per-
formance of
the agree-
ment on the
part of
Keightly, Orr,
&c. and ex-
Before we ascertain whether these then acting
partners, James Dunlap, Keightly and Orr, or eith-
er of them, did acquire as good land as they ought,
or as they might have done, we will ascertain whe-
ther they really did locate. They came to Ken-
tucky it is true; but they brought with them an ad-
venture in merchandize, and set up a store in Dan-

ville, which James Dunlap attended to, and another at Louisville, under the immediate care of Keightly, who was killed near that place; and it is not shown by any express proof, that they ever did one act towards locating the warrants, and indeed, the entries are not filed, nor can we know, from this record, whether they were made before the death of Keightly or not. It is ascertained by the proof, that a certain Joshua Archer located the warrants, and acted as a pilot, in conducting the surveys, and the only act shown to be done by the acting partners, is, that Orr attended making a part of the surveys. It is also clearly proved, that Archer never was paid for locating by either of the acting partners, James Dunlap, Orr or Keightly, but on the contrary, he claimed and received for his services, $666 66 2-3, paid by John Dunlap. The surveys were never made, till 1787, long after others had surveyed and obtained older grants on a large proportion of the ground, and even then, the surveying was paid for by John Dunlap, to the amount of $1373 33. The like may be said of the register's fees on the return of the plats and certificates to his office, amounting to $262 18.

We waive the price of the original warrants, which is alleged to have been paid by John Dunlap, because we suppose that the agreement recognizes an interest in the partners, James Dunlap, Keightly and Orr, and we conceive that it is inferrible from the agreement, that this interest was to be paid for by the personal services of these then acting partners, or in travelling and locating, and in surveyor's and register's fees, of which, according to the most liberal interpretation of the agreement, John Dunlap and Hilligas, could not be bound to pay more than their proportion, and six dollars for each thousand acres of their interest, in addition, and that after the acting partners had first performed their duty.

The taxes also, on the whole land, have been paid from the commencement of the government to the trial of this suit, except the taxes from the year 1792 to 1799, which have been refunded to John Dunlap, by two of the uncles of Mrs. Stevenson.

STEVENSON AND WIFE vs. DUNLAP'S & BLIGHT'S HEIRS.

penses paid by John Dunlap for surveying, &c—

Effect of the original contract.

Taxes.

STEVENSON.
AND WIFE
vs.
DUNLAP'S
& BRIGHT'S
HEIRS.

These large expenditures of money by John Dun-lap, impo ed upon him by the direct failure of those who were bound to perform their precedent condi-tions, are sufficient to cause a court of equity to re-fuse its aid.

To obtain a specific performance, the complainant must show the performance of the conditions precedent on his part'or account for his failure, and shew that his defalcation is a proper subject for compensation.

To reach a specific performance, the complain-ant must show that he has performed his part, if precedent, and that he is ready to do so, if his part is to be a subsequent act. At least, he must show a substantial performance, or that he was precluded from performing by the conduct of the defendant, or that there was an incidental failure, which was a proper subject of compensation, and that, without compensation was admitted, complete justice could not take place, otherwise, if ample justice can be done by compensation to the complainant, for his partial performance, he is almost always left to his remedy at law.

Failure of one partner in his undertaking to make the locations and have the surveys executed, cannot be compensated, and the defaulter allowed his part of the land.

This case, we conceive, cannot be a case of com-pensation by the complainant to the defendant, or to John Dunlap and Hilligas, if they were before the court. The personal service of searching out, and fixing upon a territory, and ascertaining the ob-jects there, by which a description of the land could be embodied in an entry, was a work that the acting partners were to see well performed, and is a very important part of the duty, so much so, that it is well known in the history of the jurisprudence of this country, that it was usual to give a third, and more frequently a half of the warrants for the performance of it. This would be, therefore, an insurmountable objection *per se*, to the enforcement of this contract, and it is more weighty when added to the fact, that through the failure of these acting partners, John Dunlap and Hilligas, had afterwards to advance large sums for the location, surveying and returning the surveys of the whole quantity, or otherwise, be in danger of loosing all their interest in the adventure. We cannot, therefore, conceive that Stevenson and wife have shown any vested equity in Keightly under the contract, by virtue of any thing that her ancestor did, added to all that was done by both James Dunlap and Orr.

We have been thus particular in ascertaining the merits of the equity reported on its original grounds, abstracted from other considerations, and subsequent events, and it was necessary thus to settle its value, for the purpose of meeting another claim which is set up by the complainants.

It is clear, that if Keightly had an equity at his death, it could not descend to, and vest in his daughter, because both he himself, and his daughter were aliens, and of course, his interest in lands could not descend to her, but it would pass to the Commonwealth by escheat, and no inquest of office was necesary for ascertaing the escheat.

On the 11th of December, 1823, the legislature of this State passed an act, as will be seen in the session acts of that year, reciting the agreement, and the death of Keightly, and the supposed escheat in consequence of his alienage, and granting to Mrs. Stevenson all the right of Keightly, escheated to the Commonwealth, and this act is relied on by the complainants, as removing the bar of alienage, and giving them a title to the land.

This act has not granted more than Keightly had, and which the Commonwealth took by escheat at his death. Now if we admit that an equity could be escheated and pass to the government as well as a legal estate, and that after the Commonwealth took an equity, she could regrant it without prejudice from an intervening grant, as this court has held with regard to a patent in 3 Litt. 394, and at the present term, in the case of Pope &c. vs. Hart's heirs, and of course, that the grants or patents to John Dunlap and Hilligas, could not prevent the operation of the act, still the enquiry must go back to the equity held by Keightly. The act has granted no more than what the State took from him, and if that was not a valid equity, at the time it was received, it is not rendered more operative by the statute, and as we have seen that it was not a valid subsisting equitable estate at that time, the act is of no service to the cause of the complainant.

STEVENSON
AND WIFE
vs.
DUNLAP's
& BLIGHT's
HEIRS.

Interest of an alien in lands in Kentucky, in the year 1784, did not pass to his heir, but escheated without office found.

Statute of Kentucky granting to Mrs. Stevenson whatever rights escheated on the death of Keightly.

Grant by the State of escheated title overreaches intervening grants to others, obtained under the general law.

STEVENSON
AND WIFE
vs·
DUNLAP'S
& BLIGHT'S
HEIRS.
_____

Dunlap's re-
cognition of
Mrs. Steven-
son's right to
the portion of
the land
claimed un-
der Keightly.

But it is insisted that this equity derived from Keightly, has often been recognized by John Dunlap, and it ought, therefore, to be enforced.

It is true, that John Dunlap received from the uncles of Mrs. Stevenson, while she was an infant, the proportion of the taxes on Keightly's share, from 1792 to 1799 inclusive, and on the face of the receipts expressed, that her interest was two ninths; on their declining to pay taxes further, he wrote to her mother in which he states that Keightly was interested in the claim; that the uncles of the heiress had discontinued paying of taxes, and urging her to make arrangements for the payment, or the land, which lay uncultivated, would be sold. This letter was dated in 1801, and was signed by Hilligas, the other patentee, and this is all the recognition of the claim ever given by him. In the year 1797, perhaps at the instance of Orr, the commissioners appointed by the county court, attempted a division, and reported, and recorded their proceedings. John Dunlap visited this country shortly afterwards, and with one of the commissioners, reconnoitered the lots, and then expressed himself, that the girl in Ireland, which must have been Mrs. Stevenson, ought to have choice, as her father had lost his life in the attempt. When John A. Stevenson had married his wife, and brought her to America, he wrote to one of these commissioners, that said J. A. Stevenson had married the daughter of Keightly, and arrived in America, whereby all the parties were represented, and advising the commissioner to show him the land, and to forward on his own deed, which is supposed to be the deed which the commissioners were allowed to make in dividing the land among the parties. He also, wrote to Stevenson himself, advising him to settle on the land, as his residence there might be of service to himself, as well as all the claimants. Stevenson accordingly settled there, and afterwards on a visit to this country, John Dunlap was at the house of Stevenson, who then resided on one of the tracts, and on Mrs. Stevenson expressing a dissatisfaction with the country, and a wish to leave it, he advised her not, and suggested, that she would do better to remain.

In addition to all this, it seems to have been tradi- STEVENSON
tionally understood in his family, that there were AND WIFE
several co-partners in the land, of which Keightly DUNLAP'S
was one, and he has said as much to several persons, & BLIGHT'S
and never seemed to dispute the title of Keightly; HEIRS.
but generally, on all these occasions, he set up his
claims for money, which he had had to pay in ac-
quiring and preserving the lands, which, when paid,
he admitted would entitle the heiress of Keightly
to his share.

Upon these recognitions of title, the bill is not Where the
founded as creating an equity, where there was none recognition
before.   They are brought in aid to cure the de- is relied on as
fects of the original claim, or as admitting its valid- evidence of
ity.   They therefore, do not preclude the defend- the original
ants from proving their original defects, not one of may be re-
which do the complainants offer to remove; but in- pelled by
sist for a conveyance, notwithstanding the default of proof of the
the original contractors.   If the defendants, there- the claim.
fore, have been, as we have seen, successful in show-
ing that the compliance of the acting partners was
not sufficient to vest an equity, these recognitions
cannot carry the title with them.

But what is more conclusive against these recog-
nitions of title by Dunlap, is, they were all made
before the passage of the act of assembly relied on,
and during a time when the heiress of Keightly had
not, and could not have, the least title, either legal
or equitable, because, as we have said, the original
equity was not good, and if it was, it had escheated
to the government, and the heiress had no other or
greater title than any other individual, and such
remained to be the fact during the lives of John
Dunlap and Hilligas.   It was necessary, therefore,
that these recognitions of title should have been
strong enough to create an original equity, which
could be specially enforced, or the complainants can
have no relief thereon.   If the government had
brought her bill to enforce this original equity, and
had given these recognitions of title to the daugh-
ter of Keightly in evidence, they could only have
been viewed as so many acknowledgments, that
there was an original equity, and could not have

STEVENSON
AND WIFE
vs.
DUNLAP'S
& BLIGHT'S
HEIRS.

One who
would have
equity must
do it.

Nonperform-
ance on the
part of
Keightly is
the same ob-
jection in the
mouth of the
alienee of his
devisees as
between the
original par-
ties.

After the
heiress of
Keightly was
induced from
Ireland here
by Dunlap's
recognition
of her claim,
and settled
on the land,
his alienee is
allowed to
deny her title

precluded the patentees from showing that there was none originally.

If the complainants meant to rely on these last recognitions of title, they ought to have shown that they had done equity by paying up the large sums of money which John Dunlap had expended in saving the land. This they have not done.

It is, however, urged, that these sums of money are due to the personal representatives of Dunlap, and as they are not before the court to settle the account, the defendants cannot avail themselves of the defence. This argument is capable of being turned against the other side with greater force. These representatives are absent because the complainants will not bring them here to do equity now, nor do they show that they have done equity before they filed their bill; but contend that they have caught Blight in the trap of controversy by himself, under such circumstances, that he cannot avail himself of this defence. They seem to have forgotten, that if John Dunlap and Hilligas could have set up this defence while they held the title, the defence is in no worse situation in the hands of either their devisees, or assignee of their devisees. The transfer could not have lost the defence.

The only doubt which remains, is, whether these recognitions of title, and the inducing Stevenson to settle on the land, are not strong enough to bind Dunlap to convey on the ground of fraud, and not on the score of contract. We allude particularly to the letter of Dunlap to Stevenson himself, and the letter to one of the commissioners. It is, however, clear that those letters alluded to the original claim, the equity of which was supposed to be in Mrs. Stevenson, and were not intended to make any new engagement; and as to the suggestion, that if Stevenson would settle on the land, and his settlement should fall to the rest, there should be a sufficient exchange to protect his settlement, it is so indifinite, that it cannot be measured. How much land should thus go for inducing Stevenson to settle, cannot be told. Certainly not the whole tract in which Stevenson and his wife had then no interest, and there

is no guide by which to assign him a less quantity, even if it be admitted, that Dunlap by thus inducing Stevenson to settle, had been guilty of such a fraud as would compel him to part with some land. On this ground, therefore, the complainants are entitled to no relief as to the partition and conveyance.

From the whole aspect of the case, we are satisfied, either that John Dunlap did not know, that by reason of alienage, the child of Keightly inherited no title, or knowing of it, as some of the depositions prove, he did not intend to take advantage either of that, or of the failue of the acting partners in performing their part of the agreement. The former, he probably meant to waive, and treat Mrs. Stevenson as an heiress, and for the latter, he meant to accept compensation and restoration of his money expended, especially, as it now appears, that such remuneration with its interest, would approximate near to, if not fully equal to the value of the whole share of Mrs. Stevenson, after deducting what is covered by elder grants. But in complying with these intentions he always had an election. He might have treated Mrs. Stevenson as possessing no title, both because her father had none, on account of the failure of him and his co-partners in performing the contract, and also, because she could not inherit his equity if any he had. As by his death his title had passed into other hands, who now stand in his place, they have a right, as he had, to refuse a specific performance. We, therefore, conceive the court below did not err, in refusing to compel a division and conveyance of the estate.

But in dismissing entirely the bill of Stevenson and wife, and granting them no relief, we conceive the decree of the court below too rigorous. For although the complainants are not entitled to a conveyance, yet they have been flattered into the expectation and belief, that they should get a title, and have been deluded into a settlement, on the land, and into improving it as their home, under circumstancs which give them a strong claim for compensation for their improvements, and even to

*Margin notes:*

STEVENSON AND WIFE vs. DUNLAP'S & FLIGHT'S HEIRS.

Decree dismissing the bill of Stevenson and wife, for a division, approved.

Heiress of Keightly and her husband induced to settle on the land by a recognition of their claim for a part, now found invalid, held to be entitled to com-

STEVENSON
AND WIFE
vs.
DUNLAP's
& BLIGHT's
HEIRS.

pensation for
their im-
provements.

a lien on the land, till they are paid.   It is true, that
Blight has not, as yet, disturbed their possession,
by obtaining a judgment, and it is equally true, that
the main object of Stevenson's bill is a partition
and conveyance, and he sets up no express prayer
for the value of his improvements.   But he charges,
that trusting to the letter of Dunlap, he has set led,
and made valuable improvements, and he prays for
a partition and conveyance, and then adds *the gen-
eral* prayer for relief, and the dismission of his bill
absolutely would bar his claim for improvements,
when Blight's heirs, as he is now dead, should proceed
against him for the possession.   It is, therefore,
competent and proper for the chancellor, to give
him that compensation now, at the same time sub-
jecting him to the equitable terms of surrendering
the possession, as soon as his lien is removed by the
payment of this claim, or by the sale of the land to
a stranger as a means of enforcing the payment by
the lien.

Principle the
compensa-
tion for im-
provement
and charges
for rents shall
be calculated
on, by the
commission-
ers.

He is, therefore, entitled to payment for such of
his improvements as are lasting and valuable, fixing
their value at the time when Blight filed his an-
swer, resisting the complainants right to recover the
land.   From the same period, Stevenson will be
bound to account for the reasonable rent of the
premises, still allowing new improvements after
that period, to sink the rents.   Also, the price of his
improvements, will be subject to be lessened by
waste, or damages committed on the premises, by
improper cultivation or otherwise, during his occu-
pancy.   This account or assessment, ought to be
made out by commissioners appointed, with com-
petent powers to accomplish it according to the
usages of a court of equity.   On the return of this
report, if the balance is in favor of Stevenson, he
must have a decree for it, and a lien upon the land,
to the extent of his original claim to secure it; being
at the same time subjected by the decree of the chan-
cellor, to surrender the possession to Blight's heirs
on the payment of the decree, or to a purchaser, if
the land be sold under the lien, as hereinafter di-
rected.

On the return of the report, and the decree in favor of Stevenson for the balance found, reasonable day ought to be given to Blight's representatives for the payment of the decree, still leaving the possession undisturbed. But if the money is not then paid, a further decree ought to be rendered, directing the sale of the land, to the amount of two ninths of the tract, or so much of that two ninths, as shall be sufficient to discharge the demand, and Stevenson must be directed by the decree to surrender the possession, and Blight's representatives to convey the title to the purchaser. But if the whole of the improvements of Stevenson are discharged by the rents, waste and damages, then this bill must be dismissed with costs.

We will further add, that Stevenson paid one half of the direct tax, in redeeming the land after it had been sold to Samuel Davis, under an arrangement, that this payment should not prejudice the title of either, and he also paid the direct tax of another year, through the instrumentality of a Mr. Morrison. As Blight was bound by his duty to government, to pay these taxes, and Stevenson paid them, under the delusive expectation of title, Blight's estate ought to refund these sums with interest, and therefore, they must be taken into the account herein directed. As to the portion of the taxes paid by the relatives of Mrs. Stevenson for her to Dunlap, in his lifetime, the complainants must be left to assert their claim against the estate of Dunlap.

Decree reversed with costs, cause remanded for such proceedings and decree, as shall conform to this opinion and the rules of equity.

*Denny* and *Mayes*, for appellant; *Talbot* and *Darby*, for appellees.

---

**Margin notes:**

Stevenson AND WIFE vs. DUNLAP'S & BLIGHT'S HEIRS.

Directions for carrying the decree into effect.

Amount paid for taxes after Stevenson and wife came to the country, to be allowed and the land bound for it, as for the value of the improvements.